STATE ex rel. W. T. HODGE v. THE MARIETTA AND NORTH GEORGIA RAILROAD.

*Penalty— Party— Constitution—Amendment—School Fund.*

1. The penalty prescribed by *The Code*, § 1960, against corporations for failure to make the returns required by the preceding section can only be recovered in an action brought by the State. A private relator cannot maintain the action.

2. While an amendment substituting parties can be allowed in the Supreme Court, it will not be permitted when it will put the opposite party to a disadvantage.

3. In this case the motion to substitute the County Board of Education of Wake as party plaintiff is denied. The State alone is authorized to sue.

CIVIL ACTION, tried before *MacRae, J*, at April Term, 1890, of WAKE Superior Court.

The defendant failed to make the annual report to the Governor required by the statute (*The Code*, § 1959) for the year ending the 30th day of September, 1888. The relator brought this action in the name of the State to recover the penalty of $500 prescribed and allowed by the statute (*The Code*, § 1960) in case of such failure.

The defendant demurred to the complaint, and assigned as grounds of demurrer—

"1. That said complaint does not state facts sufficient to constitute a cause of action, in this: That upon the facts herein stated no cause of action hath accrued to the said W. T. Hodge under the laws of North Carolina to demand and have of this defendant the sum of $500, but that upon said facts a cause of action hath accrued to the State of North Carolina to demand and have of this defendant the said sum of $500, to be faithfully appropriated for establishing and maintaining free public schools in the proper county or counties of this State, under section 5, Art. 9 of the Constitution of said State.

"2. That it appears upon the face of said complaint that W. T. Hodge is not the proper relator of the plaintiff, and that this action cannot be maintained by the State of North Carolina upon the relation of said W. T. Hodge."

The Court sustained the demurrer and dismissed the action. The relator, having excepted, appealed to this Court.

In this Court "the County Board of Education for the county of Wake" moved that it be made a party plaintiff.

*Messrs. Armistead Jones* and *R. O. Burton, Jr.*, for Hodge.
*Messrs. S. G. Ryan* and *J. N. Holding*, for County Commissioners.

*Messrs. R. H. Battle, T. C. Fuller, A. W. Haywood, George V. Strong, F. H. Busbee, John Devereux, Jr.*, and *J. W. Hinsdale*, for defendant.

CLARK, J.: We concur in the conclusion reached by the learned Judge who tried this cause below.

The statute prescribing the penalty sued for in this action (*The Code*, § 1960) is as follows: "Any such corporation (railroad) which shall neglect to make the report as provided in the preceding section (1959) shall be liable to a penalty of five hundred dollars, to be sued for in the name of the State of North Carolina in the Superior Court of Wake County." The Constitution, Art. 9, § 5, provides that "the clear proceeds of all penalties and forfeitures," &c., shall be "faithfully appropriated for establishing and maintaining free public schools" It is immaterial as to this action whether, by this clause of the Constitution, all penalties and forfeitures are appropriated to the public schools without power in the Legislature to give the penalty in any case to "the party suing for the same," or to "the party aggrieved," or whether the true construction is that the constitutional provision devotes to the school fund such penalties and forfeitures only as by the several statutes imposing them shall accrue to the State,

as was held in *Katzenstein* v. *Railroad,* 84 N. C., 688, and we leave that question open. However that may be, the penalty here, in any event, goes to the State. The act creating it (*The Code,* § 1890, *supra*), does not contemplate that any private person may sue for and recover the penalty. The act is to enforce a duty in which the public generally is interested, and as to which there could be, properly, no "person aggrieved." It requires the penalty " to be sued for in the name of the State of North Carolina in the Superior Court of Wake County." This is a clear expression, as it seems to us, of the legislative intent that the penalty should be sued for and recovered by the State. If, on the contrary, it had been intended to give the penalty to any person who would sue therefor, the statute would either have so stated or would have imposed the penalty without further provision. In the latter case, there might have been ground for the plaintiff's contention that, by virtue of *The Code,* § 1212, he is entitled to recover it. That section enacts that, when the act imposing a penalty does not provide " to what person the penalty is given, it may be recovered by anyone who will sue for the same, and for his own use." But here the statute imposing the penalty provides for its recovery by the State, and the Constitution devotes such penalties and forfeitures to the school fund.

In this Court, the County Board of Education of Wake asked to be substituted as relator, or as party plaintiff, under the provisions of *The Code,* § 965. This Court has power to make such substitution of parties in proper cases (*Grant* v *Rogers,* 94 N. C., 755; *Wilson* v. *Pearson,* 102 N. C., 290), provided the opposite party is put to no disadvantage. *Justices of Tyrrell* v. *Simmons,* 3 Jones, 187; *Grant* v. *Rogers, supra.* The amendment cannot be allowed, because the law confers no right upon the County Board of Education of Wake to maintain the action. That right is vested solely in the State, and it has not asked to be substituted as a party.

The demurrer to the complaint having been sustained, the usual course is to dismiss the action, unless plaintiff asks and is allowed to amend. *Netherton* v. *Candler,* 78 N. C., 88. This was not the case here. The judgment dismissing the action is affirmed.

AVERY, J., concurring: I concur in the opinion of the Court, but I do not wish to be misunderstood as endorsing the principle laid down in *Katzenstein* v. *Railroad,* 84 N. C., 688. Should a case be presented involving the question, whether the whole of a penalty can be given by statute to an informer, I should be in favor of overruling the doctrine established in that case. I am not willing to concede that a constitutional provision, made by the people in Convention assembled, can be restricted in its application because of the terms of some pre-existing statute; and, if the point should be raised in future, I should feel it my duty to give at length my reasons for withholding my assent to such a principle. For the present, I am content to state my legal conclusions.

I think that the Legislature may give one-half, or some other proportion deemed reasonable, as a reward to an informer, and the residue would then be the net proceeds which the Constitution devotes to the school fund of the counties. I think that the net proceeds of all penalties collected in the Courts of Justices of the Peace, Criminal and Superior Courts, should be paid over to the treasurers of the counties, to constitute a part of their school fund, while the penalties collected under town ordinances do not come within the constitutional provision, and may be given by law for the support of a city or town.

MERRIMON, C. J., concurring: The statute (*The Code,* § 1959) requires every railroad company to make annual report to the Governor of certain matters and things as therein prescribed; and it further provides (*The Code,* § 1960),

that "Any such corporation which shall neglect to make the report as provided in the preceding section, shall be liable to a penalty of five hundred dollars, to be sued for in the name of the State of North Carolina in the Superior Court of Wake County."

The relator contends that the penalty thus prescribed is not allowed in favor of any particular person, or to be devoted to any specified purpose, but is allowed to any person who shall first sue for the same, and, therefore, he is entitled to maintain this action. He relies upon the statute (*The Code*, § 1212), which prescribes that " When a penalty may be imposed by any law passed, or hereafter to be passed, and it shall not be provided to what person the penalty is given, it may be recovered by anyone who will sue for the same, and for his own use."

On the other hand, the defendant contends that such penalty belongs to the State, to be devoted to the support of public schools, as required and directed by the Constitution (Art. IX, sec. 5), which provides as follows: " All moneys, stocks, bonds and other property belonging to a county school fund; also the net proceeds from the sale of estrays; also the clear proceeds of all penalties and forfeitures, and of all fines collected in the several counties for any breach of the penalty or military laws of the State; and all moneys which shall be paid by persons as an equivalent for exemption from military duty, shall belong to and remain in the several counties, and shall be faithfully appropriated for establishing and maintaining free public schools in the several counties of this State: *Provided*, that the amount collected in each county shall be annually reported to the Superintendent of Public Instruction."

It is to be observed that the statute (*The Code*, § 1960) above recited, does not simply impose the penalty as therein provided; it provides further, that it is " to be sued for in the name of the State of North Carolina in the Superior

Court of Wake County." This provision is peculiar and unusual. It is not casual and meaningless; on the contrary, it is intended to serve an important public purpose. It fairly implies that the penalty, being intended to compel the performance of a duty imposed on railroad companies, affecting the State itself and its purposes, and, therefore, public in its nature, must be sued for in the name of, and for the purposes of the State, in the county where civil actions in which the State is solely interested are ordinarily brought and prosecuted. The statute is to be treated and understood as imposing the penalty and directing an action to be brought in the name of and for the State by its proper officer when a railroad company shall incur such penalty. The penalty is prescribed by the section of the statute next after that prescribing important duties to be discharged by railroad companies; and as to the action to recover the same, the language is not simply permissive, as that the penalty " may be sued for," but the pertinent words employed are directory, in a sense mandatory, to-wit, "to be sued for," &c. It is not contemplated or intended that a private person—any person—who will sue for it, may have the penalty. If it had been so intended, the statute would simply have imposed the penalty without further provision, and the general statutory provision (*The Code*, § 1213), which provides that " when any penalty shall be given by any statute, and it is not prescribed in whose name suit therefor may be commenced, the same shall be brought in the name of the State," would apply. If the statute had simply prescribed the penalty, omitting the significant words, " to be sued for," &c., the contention of the relator might have force. But those words, the provision embodied by them, cannot be treated as mere surplusage, without meaning; they are reasonably capable of the meaning attributed to them above, and thus they serve an important public purpose. It must be taken that the

Legislature intended that the penalty should be sued for in the name of and for the State.

The Court, therefore, properly held that the relator could not maintain this action.

It is further to be observed that the clause of the Constitution above recited does not prescribe penalties and forfeitures—it has reference to them as they are prescribed by legislative enactments. Nor does that clause in terms, or by necessary implication, purport to repeal or modify all such statutes and statutory provisions as prescribe them, so far as to require that such penalties and forfeitures shall all " belong to and remain in the several counties, and shall be faithfully appropriated for establishing and maintaining free public schools in the several counties of this State"; nor does this clause declare that all penalties and forfeitures shall accrue, belong or go, in whole or in part, to the several counties, and thus clearly express the purpose to modify existing pertinent statutes and control all future like ones. It is organic in its nature and purpose, not legislative; it does not intend to enlarge, abridge, or at all interfere with the power of the Legislature in respect to penalties and forfeitures, or to repeal or modify statutes—it simply declares, and only intends to declare, what shall constitute the fund in the several counties of the State "for establishing and maintaining free public schools" therein; what moneys, stocks, bonds and other property, and what sources of revenue in and of the several counties that belong to them, must and shall continually and perpetually constitute the fund to be devoted to the purposes specified. Such provision embraces all such penalties and forfeitures, and only such as by law accrue, belong and go to the several counties and the county school funds, and there are many such. The words, " Also the clear proceeds of all penalties and forfeitures," of the clause in question, refer to and embrace only such as by some statute are given to the county or the county school fund.

The whole purpose of the clause in question is to establish
and provide for a certain permanent fund for "establishing
and maintaining free public schools in the several counties,"
and to provide such fund out of such funds and resources as
by law belong, or may belong, to the counties. At the time
this clause was adopted as part of the Constitution, numer-
ous statutes prescribed penalties and forfeitures, giving the
same to counties and county school funds, while numerous
other statutes prescribed and gave the like to divers other
classes of persons. If the purpose of this provision had been
to repeal or modify such statutes, it would and ought to have
done so by appropriate reference and pertinent words of
repeal or modification. But such words do not appear—
simply reference is made to "all penalties and forfeitures"
These words, taken in connection with other words preced-
ing and following them, and the purpose of the clause of
which they are part, reasonably imply "all penalties and
forfeitures" given to the county and the county school fund
by the statutes prescribing them.

Moreover, in the absence of express words or necessary
implication in some way arising to the contrary, and in view
of the purposes to be accomplished by penalties and forfeit-
ures in many cases, it is altogether improbable that there
was any intent in framing the Constitution to devote all
penalties and forfeitures to the single purpose of free public
schools. To so devote them in all cases would defeat, in
large measure, the ends usually sought to be accomplished
by them in the enforcement of statutes and the rights of
individuals.

In *Katzenstein* v. *Railroad,* 84 N. C., 688, this Court expressly
held that the penalty sued for did not belong or go to the
county school fund, under the Constitution, Art. 9, § 5 (the
clause now under consideration); and in numerous cases
where the action was brought by a party suing in his own
name, or in the name of the State on his relation, as for a

penalty given by statute to him, or to whomsoever might sue for the same, this Court has uniformly given effect to the statute, thus, in effect, interpreting the clause of the Constitution in question as I have done here. ' *Branch* v. *Railroad*, 77 N. C., 347; *Keeter* v. *Railroad*, 86 N. C., 346; *Whitehead* v. *Railroad*, 87 N. C., 255; *McGowan* v. *Railroad*, 95 N. C., 417; *McGwigan* v. *Railroad*, 95 N. C., 428; *Williams* v. *Hodges*, 101 N. C., 300; *Cole* v. *Laws*, 104 N. C., 651; and there are many other like cases. ·

Then, as the Legislature may give, by statute, penalties and forfeitures to persons and particular purposes as in its wisdom it may deem proper, it fairly follows that counties and county school funds are entitled to have only such of them as are given to them by statute, and that the interpretation I have given the clause of the Constitution under consideration is the correct one. If the words "all penalties and forfeitures," as employed in this clause, are to be limited at all (and I have shown they must be), then it is difficult to see how they can apply to and embrace any such penalties and forfeitures given by statute, otherwise than to counties and county school funds. How, at what point and by what authority can the Courts find or lay down a line of demarkation in the face of express statutory enactments? There is no classification of the penalties and forfeitures referred to in or embraced by the clause. It must be construed to embrace all penalties in the most comprehensive sense, or only *all* given to counties by statute.

The Constitution of the State of Missouri contained a clause (Art. 11, § 8) altogether in substance and very much in terms like that of this State in question, and the question whether, under it, *all penalties* belonged and went to the county school fund was directly presented to the Supreme Court of that State for its decision in *Bennett* v. *Railroad*, 68 Mo., 434, and that Court decided that the Legislature had power to prescribe to whom or to what purpose penalties

should go or be devoted, and hence, that the penalty sued for in that case did not belong or go to the county school fund by virtue of the constitutional provision, thus adopting the interpretation I have adopted as the true one in this case. The case just cited was afterwards cited and approved in *Spellman* v. *Railroad,* 71 Mo., 434, and several other cases. Thus my view is fully sustained by a Supreme Court of great respectability, as well as by reason and principle.

I may add that the legislative interpretation of the clause in question, in numerous enactments, is not to be ignored or treated lightly. Indeed, such enactments are presumed to be consistent with and warranted by the Constitution, but not conclusively so. The Courts, however, will be slow to declare and adjudge the contrary; they will not do so, unless the inconsistency is clear and plain. The Legislature, at every one of its sessions since the adoption of the Constitution, has passed numerous statutes prescribing penalties and forfeitures, giving the same to parties and purposes other than counties and county school funds, and it seems never to have questioned or doubted its power and authority to do so.

I am, therefore, of opinion that neither any county nor any school fund is entitled to the penalty sued for in this action, notwithstanding the relator is not entitled to the same.

" The County Board of Education for the County of Wake" moved in this Court that it be made a party plaintiff. The motion cannot be allowed. It does not appear that that Board has any interest in the action. If it be taken that it represents the county named and the school fund thereof, for the reasons already stated, it has no interest in the penalty sued for. But if it had such interest as it claims, and this Court has power to allow its motion, it would be unjust to do so, and thus render the judgment appealed from erroneous, when, otherwise, it would not be so. If that Board had any interest in the action that entitled it to be made a

108—3

party thereto, it should have moved in apt time in the Court below to be made such. No reason is shown why it failed to do so. In such case, this Court will not allow the motion. *Justices of Tyrrell* v. *Simmons*, 3 Jones, 187; *Wilcox* v. *Hawkins*, 3 Hawks, 84; *Allen* v. *Jackson*, 86 N. C., 321; *Grant* v. *Rogers*, 94 N. C., 755.

It is suggested that the State is entitled to the penalty sued for, that the relator should be treated as merely an unnecessary and improper party, and that the State should be allowed to further prosecute the action for its own benefit. But the State does not ask to be allowed to do this. There may be reasons why it ought not, and would not, bring and prosecute an action for such purpose. Besides, this action was not brought by or for the State. The relator brought it *in the name* of the State, as he insisted he had the right to do, for his own benefit, and on his own account. This appears from the record. The complaint is framed and contains pertinent allegations for this purpose. The action is that of the relator, and must be so treated. *State* v. *Mangum*, Phil., 177.

*Per Curiam.* . Affirmed.