R. D. JOYNER v. J. F. HARRIS.

(Filed 27 November, 1911.)

1. Register of Deeds — Penalty Statutes—Interpretation—Marriage License—Reasonable Inquiry—Definition.

The various sections of the Revisal relative to the issuance of a marriage license by the register of deeds, being sections 2083, 2088, 2090, especially the latter two, are construed as being *in pari materia,* and thus considered, the inquiry required to be made before issuing the license is such as to make it appear probable to a prudent person that there is no legal objection to the marriage.

JOYNER *v.* HARRIS.

2. Register of Deeds — Marriage License — Penalty Statutes—Reasonable Inquiry—Verdict Directing—Questions of Law.

Whether a register of deeds made reasonable inquiry; before issuing a marriage license, within the meaning of our statute, becomes a question of law, on admitted facts, and the court may instruct the jury to answer the issue according as it may decide the law upon the facts to be. Rules adopted by the courts for the purpose of determining whether such inquiry has been made by the register of deeds, discussed by MR. JUSTICE WALKER.

3. Same—Verdict Directing—Evidence, How Considered.

Upon issues submitted as to whether a register of deeds made reasonable inquiry before issuing a marriage license, the court's instruction, if the jury believe the evidence they should answer the first issue "Yes" and the second issue "No," and if they did not believe the evidence, to reverse their answers, with the burden of the issues upon the plaintiff, is equivalent to saying there was no evidence which, if believed, entitled the defendant to the verdict, and the evidence will be considered in the light most favorable to him.

4. Register of Deeds—Marriage License—Reasonable Inquiry—Insufficiency.

It is not a reasonable inquiry by the register of deeds as to the age of the prospective bride which will relieve him of the penalty of Revisal, sec. 2083, forbidding the issuing of a license for the marriage of a woman under 18 years of age without the consent of the person designated by the statute, for him to rely solely upon the answers of those whom he did not know, but merely trusted because of their manner and appearance, their information as to the age of the woman appearing to depend only upon what she had told them, and when by the exercise of reasonable care and diligence a means of obtaining reliable information could have been. made available. *Cole v. Laws*, 104 N. C., 651; *Morrison v. Teague*, 143 N. C., 186, cited and applied.

5. Register of Deeds—Marriage License—Penalty Statutes—Age of Woman—Substantive Evidence.

In an action against a register of deeds for the penalty prescribed by Revisal, sec. 2083, for issuing a license for the marriage of a woman under 18 years of age, without the consent of the person designated by the statute, it is held that the testimony of a witness as to the age of the woman depending solely upon her statements to him, which he repeated to the register when the license was applied for, is not substantive evidence of her age.

APPEAL from *Biggs, J.,* at the January Term, 1911, of CABAR-RUS.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*T. D. Maness for plaintiff.*
*Montgomery & Crowell and H. S. Williams for defendant.*

WALKER, J. This is an action to recover the penalty given by Revisal, sec. 2090, for unlawfully issuing a marriage license to Martin Burrus and Julia B. Joyner, without proper inquiry as to the age of the prospective bride. The statute, under which this suit was brought, is a wise and beneficent one, the object being to protect the parties themselves, and the community as well, from hasty and improvident matrimonial alliances, which eventually produce discord and unhappiness in the family—one of the essential units of our republican household—and are hurtful to society in many ways. Let us examine the case in view of this main purpose of the law.

Martin Burrus and Julia B. Joyner, by themselves, had consented to their marriage; but in order to make it a valid union it is required by the statute that he should be 16 years old and she 14 years old (Revisal, sec. 2083), provided that if they are under the age of 18 years, the consent of the person designated by the statute shall first be obtained; and if a register of deeds knowingly, or without reasonable inquiry, issues a license for the marriage of any two persons, either of whom is under that age, without the written consent required by law to be delivered to him (Revisal, sec. 2088), he forfeits the sum of $200, as a penalty, to any parent, guardian, or other person standing *in loco parentis,* who may sue for the same. It is further provided that the register of deeds shall issue the license if it appears to him probable that there is no legal impediment to the marriage. Revisal, sec. 2088.

It has been held that the several sections, and especially sections 2088 and 2090, being *in pari materia,* should be construed together, and when this is considered, the inquiry required to be made before issuing the license is such as makes it *probable* that there is no legal objection to the marriage. *Bowles v. Cochran,*

93 N. C., 398. With this general definition of a reasonable inquiry established, we find that the following rules have been adopted by this Court for the purpose of determining if such an inquiry or investigation has been made:

1. Where there is a conflict of evidence upon the question, it should be submitted to the jury to decide, under proper instructions from the court, whether due inquiry had been made.

2. Where the facts are admitted or established, what is reasonable inquiry becomes a question of law, and the court may instruct the jury to answer the issue, according as it may decide the law upon the facts to be. *Joiner v. Roberts,* 114 N. C., 389.

3. The statute (Revisal, sec. 2088) does not require that the register shall inquire as to the age of the party by examining the witnesses or the applicant under oath, but merely declares that he may do so, and his doing or not doing so, in the exercise of his discretion, is only a circumstance for the jury to consider in finding whether the proper inquiry has been made.

4. While the court cannot prescribe any exact rule for the guidance of the officer, it would seem that "reasonable inquiry" involves, at least, the idea that it should be made of some person known by him to be a reliable party, or, if unknown to him, information as to his reliability should be obtained from some person who is known by the officer to be reliable.

5. The burden of proof is upon the plaintiff to show that the officer issued the license when he knew of the impediment to the marriage, or that it was forbidden by the law, or when he had not made reasonable inquiry. *Furr v. Johnson,* 140 N. C., 157; *Trolinger v. Boroughs,* 133 N. C., 312.

The fourth rule may be somewhat modified in its application by the particular facts and circumstances of the case in hand, what is due inquiry depending largely upon them.

Let us now apply the law, as thus understood, to the facts of this case.

The court instructed the jury, if they believed the evidence, to answer the first issue "Yes" and the second issue "No," and if they did not believe the evidence, to reverse their answers, as the burden of the issues was upon the plaintiff. Under these instructions, the jury returned the following verdict:

1. Was the plaintiff's daughter, Julia Burrus, under 18 years of age at the time of her marriage? Answer: Yes.

2. Did the defendant issue the marriage license without plaintiff's consent and without reasonable inquiry? Answer: Yes.

3. What amount, if any, is plaintiff entitled to recover of the defendant? Answer: $200.

The charge of the judge was equivalent to saying that there was no evidence which, if believed, entitled the defendant to the verdict; and this being so, we must view the evidence in the light most favorable to him. We will, therefore, take his version of the facts, which in substance is as follows:

Martin Burrus, the prospective groom, went to the register's office with his brother, Adam Burrus, and applied for the license. They were well dressed and defendant says he thought they were trustworthy and would not get him in trouble. He asked them if they were related to J. A. Harris, whom defendant knew very well, and one of them replied that he was his uncle. He inquired of Martin Burrus his age, and was told that he was 21 years old, and lived in No. 9 Township with his father. He then stated the ages of his father and mother. Defendant then asked him as to the age of the young lady, and he answered that "She said she was 18." Defendant told him "that would not do; that is not the question," but "is she 18, and will you swear it?" to which he replied that he would, and thereupon the license was issued, and defendant testified that, if he had not made that statement, he would not have issued the license. Martin Burrus also gave the names of her father and mother and their place of residence, and further stated that they all lived on Tom Bost's farm, within 300 or 400 yards of each other. When he was asked to qualify as to the girl's age, he replied, "She said she was 18," but when he was again told that his answer would not do, he swore that she was 18. Defendant knew the plaintiff, but did not know, at the time, that she was his daughter. He did not ask if there was any objection to the marriage. The two men answered the defendant's questions openly and frankly, and there was nothing in their manner or conduct to arouse suspicion. He knew there was a telephone to Bost's mill, where the girl's parents lived, but he did not use it. He had never

seen the two young men before and did not know anything about them up to that time, and issued the license solely upon their statement, they not being identified or vouched for by any one. There was no further inquiry by the defendant about the matter.

The plaintiff's evidence varied a little from the defendant's, it appearing therefrom that the questions were addressed to the brother of the applicant, Adam Burrus, and the answers thereto given by him; but this makes little or no practical difference in the result. Plaintiff testified that defendant afterwards told him that he regretted the occurrence, and asked him not to think hard of him, and that "Nobody else would get him in a hole like that again." The plaintiff's witness, Adam Burrus, differed with the defendant as to what he or his brother had said as to the age of the girl, he stating that they did not say that she was 18, but that "she had said so to him" and he had no reason to doubt her word. In this respect, defendant was corroborated by his witness, W. M. Weddington, who stated that the one who answered the questions, signed the oath as to her age. The plaintiff testified that his daughter was a little over 14 years old at the time of the application for the license, and there was no evidence to the contrary as to her age.

We do not think, upon this statement of the facts which is most favorable to the defendant, that he made the requisite inquiry. The two young men were entirely unknown to him, and it is perfectly apparent that they were either ignorant of the girl's age or were attempting to suppress the truth as to it. The defendant had no reason to rely upon them as men of good character and as being trustworthy, for he knew absolutely nothing about them, and, besides, it should have been evident to him, or to any prudent man under the same circumstances, that they were basing their opinion as to her age upon her own statement, and not upon their own knowledge. He could easily have obtained reliable information by the use of the phone, or by requiring them to produce some person known to him, who would identify them as being the persons they had represented themselves to be, and who would testify as to their good character. This case is not, in its main features, unlike *Cole v. Laws,* 104 N. C., 651, the syllabus of which fairly states the facts and

the ruling, and is as follows: "When a register of deeds issues a license for the marriage of a woman under 18 years of age, without the assent of her parents, upon the application of one of whose general character for reliability he was ignorant, and who falsely stated the age of the woman, without making any further inquiry as to his sources of information: *Held,* that he had not made such reasonable inquiry into the facts as the law required, and he incurred the penalty for the neglect of his duty in that respect." And likewise, in *Morrison v. Teague,* 143 N. C., 186, it was held that, "In an action against a register of deeds to recover the penalty under Revisal, sec. 2090, for issuing the marriage license contrary to its provisions, where the uncontradicted evidence showed that the register took the word of the prospective bridegroom and his friend, neither of whom he knew, as to the age of the young lady, and made no further inquiry of any one, the court should have given the plaintiff's prayer for instruction that, as a matter of law, defendant failed to make reasonable inquiry as to the age of the plaintiff's daughter." To the same effect are the following cases: *Williams v. Hodges,* 101 N. C., 300; *Trolinger v. Boroughs, supra; Laney v. Mackey,* 144 N. C., 630. If we should hold that a register of deeds can satisfy himself as to the essential facts upon such an inadequate investigation as was made in this case, we would defeat the very object and purpose of the statute to throw safeguards about the young and inexperienced, who would, by reason of their youthful impulses, be liable to enter into so solemn and serious a relation lightly or unadvisedly, and not soberly, discreetly, and reverently, as they should do and as the best interests of society require should be done.

It was suggested that the defendant had just taken office, and intended no wrong. We do not doubt it, and it is a matter which might, perhaps, induce the plaintiff to relent in his prosecution, and constitutes a strong appeal to his generosity; but the law must be upheld, and ignorance of it is no excuse. The best way to compel obedience to it is by its strict enforcement. This will make the citizen and the officer more careful to observe it. We sympathize with the defendant, under the circumstances, but cannot help him. He has violated the law and, if the plain-

tiff exacts it, as did Shylock, the Jew, of his victim, must pay the penalty.

There is no force in the contention that the witness Adam Burrus testified to the age of the girl, as given by her to him. He was manifestly merely repeating to the court what occurred before the register of deeds, and did not intend to state, independently and substantively, that she had told him her age. It was, therefore, no evidence for the defendant, upon the first issue, conceding that it would have been had he so testified.